IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH RAY HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-31-WKW |
| | ) | [WO] |
| THE CITY OF PRATTVILLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth Ray Harris brings this 42 U.S.C. § 1983 action against Defendants City of Prattville and Prattville Chief of Police Alfred Wadsworth. The case is before the court on Defendants' Motion for Summary Judgment (Doc. # 18). Mr. Harris has responded to this motion (Doc. # 23), and Defendants have replied (Doc. # 26).

The summary judgment motion has been fully briefed and is ready for disposition. Upon careful consideration of the briefs, the relevant law, and the record as a whole, the court finds that the Motion for Summary Judgment is due to be granted on all of Mr. Harris's claims.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1343. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*); Fed. R. Civ. P. 56(a).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do

3

more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

On summary judgment, the facts must be viewed in the light most favorable to the nonmovant. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Hence, "the 'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

### III. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an arrest performed by officer Ronald Davis.[1] The facts, construed in the light most favorable to Mr. Harris, follow.

---

[1] Officer Davis was previously dismissed from this case upon motion of Mr. Harris. (Doc. # 53.) Counts III, IV, V, and VI of Mr. Harris's Complaint were against Officer Davis, and alleged malicious prosecution under the Fourth Amendment and state law, and state law claims for false imprisonment, assault, and battery. Only Counts I and II remain.

On June 8, 2006, the City of Prattville police department responded to a domestic disturbance call on Skidmore Avenue in Prattville, Alabama. Among the police officers dispatched to the scene was Patrol Officer Corporal Ronald Davis. Police arrived at the residence shared by Mr. Harris and his wife, Kelli Harris. The Harrises were not causing a disturbance when the officers arrived at their house. The officers entered the backyard and encountered Mr. Harris, who was repairing a broken window. The responding officers were under the belief that Mr. Harris had outstanding warrants for his arrest. Officers handcuffed Mr. Harris and placed him in a patrol car while they investigated the warrants to ascertain whether he was the same Kenneth Harris named in the warrants.

While Mr. Harris was in the patrol car, an argument occurred between Kelli Harris and Officer Davis. In the course of this argument, Mrs. Harris and Officer Davis got into a heated exchange, and Mrs. Harris retreated into the house. Shortly afterwards, Officer Davis broke down the door and entered the residence. Officer Davis threw Mrs. Harris to the floor and struck her repeatedly with his hand, injuring her head, dislocating her shoulder, and breaking her ankle.

Meanwhile, it was determined that Mr. Harris did not have any outstanding warrants for his arrest. Mr. Harris was released from handcuffs upon his wife being removed from the house. Mrs. Harris was taken to the hospital in an ambulance. Mr.

Harris was allowed to follow his wife to the hospital. While at the hospital, Mr. Harris became involved in a verbal dispute with Officer Davis, as well as with other Prattville police officers who were at the hospital on an unrelated matter. As Mr. Harris attempted to enter his wife's hospital room, Officer Davis confronted and cursed Mr. Harris, telling him that he was not allowed to be present with his wife since she was under arrest. Mr. Harris stated that he had a right to be with his wife and could not be excluded from the hospital room. Mr. Harris did not raise his voice to Officer Davis, but Officer Davis yelled and swore at him, using multiple profanities, and ordered him out of the hospital room where Mrs. Harris was being treated.[2] A doctor at the emergency room intervened, and ordered both Mr. Harris and Officer Davis to leave the room.

Mr. Harris left his wife's room, under protest, in an orderly fashion. Mr. Harris left the emergency room area and used the courtesy phone at the entrance of the hospital to complain to the hospital staff that the Prattville police were keeping him from being able to see his wife. Mr. Harris then exited the hospital. As he was walking away, Officer Davis yelled "hey" at him, causing him to turn. Officer Davis then deployed his taser against Mr. Harris and placed him under arrest for disorderly

---

[2] Although the sequence of events involving Mr. Harris's conduct while at the hospital is in dispute, on summary judgment, the facts are presented in the light most favorable to Plaintiff, and thus, the court adopts Mr. Harris's version of the facts for this motion.

conduct and resisting arrest. Mr. Harris alleges that there was no cause for Officer Davis to use his taser.

After Mr. Harris had been tasered and arrested, he was placed in the back of a police car. While he was waiting there, he saw Prattville Chief of Police Alfred Wadsworth having a discussion with Officer Davis and another unidentified police officer. Mr. Harris does not know what they were speaking about. However, Chief Wadsworth saw that Mr. Harris was under arrest. There is no evidence that Chief Wadsworth observed Officer Davis firing the taser or arresting Mr. Harris. Mr. Harris was convicted of disorderly conduct in the Municipal Court. On appeal to the Circuit Court of Autauga County, the criminal charges were dismissed by the City prosecutor on January 29, 2009.

Mr. Harris filed the current lawsuit on January 12, 2011. His Complaint asserts violations of federal law and rights under the Fourth and Fourteenth Amendments to the United States Constitution. Mr. Harris contends that the City of Prattville had a custom or policy of hiring officers with malicious propensities, and of not disciplining officers for falsely prosecuting citizens, and that this custom or policy resulted in individuals being arrested and prosecuted without probable cause. Mr. Harris includes in this claim that Chief of Police Wadsworth was "deliberately indifferent to the constitutional rights" of Mr. Harris in this regard. (Complaint, Count I). Mr. Harris

also alleges a § 1983 Fourth Amendment claim for false arrest and malicious prosecution against Chief Wadsworth based on a theory of supervisory liability. (Complaint, Count II).  Chief Wadsworth is sued in his individual capacity only.

## IV. DISCUSSION

Harris does not oppose the City's motion for summary judgment on Count I, conceding that the evidence for his claims against the City is not greater than the evidence presented in the related case involving Mr. Harris's wife, *Kelli Harris v. Prattville, et al.,* 2008 WL 2704684, 2:07-CV-349 (M.D. Ala. July 7, 2008). Therefore, summary judgment is due to be entered in favor of the City on Count I. *See, e.g., Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's "failure to brief and argue [an] issue . . . before the district court is grounds for finding that the issue has been abandoned").

The remaining claim is against Chief Wadsworth, alleging that Chief Wadsworth is liable under the Fourth Amendment for false arrest and malicious prosecution based on a theory of supervisory liability (Complaint, Count II).  Mr. Harris bases this claim solely on the fact that "Wadsworth had discussions with Davis while the Plaintiff was in the backseat of a patrol car handcuffed." (Doc. # 23, at 4.) However, Mr. Harris contends that "by allowing Davis to take Kenneth Harris to jail

and swear out warrants for disorderly conduct and resisting arrest," Chief Wadsworth "approved and participated in the unlawful act which violated the constitutional rights of Harris." (Doc. # 23, at 4.) Mr. Harris's argument for supervisory liability under these circumstances fails as a matter of law.

"It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). However, supervisors are liable under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Id.* (citation and internal quotation marks omitted). A causal connection can be established by evidence that supports an inference that the supervisor had the "ability to prevent or discontinue any *known* constitutional violation by exercising his authority over the subordinate who commits the constitutional violation and subsequently fails to exercise that authority to stop it." *Id.* at 765 (emphasis added). Mr. Harris argues that Chief Wadsworth is liable under a supervisory theory based on his alleged personal participation and his failure to stop his arrest and prosecution. (Doc. # 23, at 4-5.)

Here, there is no evidence whatsoever that Chief Wadsworth was aware of any constitutional violation. Plaintiff's only allegation is that Chief Wadsworth and

9

Officer Davis had a discussion while he was under arrest in the patrol car.  However, this allegation fails to meet that standard for supervisory liability under § 1983 because it is insufficient to support an inference that Chief Wadsworth had any knowledge that the arrest was without probable cause.  Mr. Harris cannot point to any content of the conversation to suggest that Chief Wadsworth knew there was a constitutional violation occurring, because he has not provided any evidence related to what was said during this brief conversation.[3]  The only evidence that there even was a conversation is Mr. Harris's affidavit stating that he saw Chief Wadsworth speak to Officer Davis.  This does not establish that Chief Wadsworth had any knowledge that Mr. Harris's rights were allegedly violated or that Officer Davis lacked probable cause for the arrest.

Having conducted an independent review of the record, the court is unable to conclude that there is any evidence to support that Chief Wadsworth even spoke to Officer Davis about Mr. Harris that night.  Chief Wadsworth's deposition reveals that he did not involve himself in an investigation of the incident involving the Harrises until he received a phone call from Mrs. Harris a day after the incident.  (Doc. # 18, Ex. 2 at 6.)  This is the only evidence of Chief Wadsworth's knowledge of the events

---

[3] Chief Wadsworth was deposed in connection to this lawsuit on April 15, 2008, but neither party cites his deposition to reveal what might have been said between him and Officer Davis.

that night, and it suggests that he had not investigated anything connected with Mr. Harris's case prior to June 9, 2006. The evidence does not support that Chief Wadsworth was *knowingly* supervising a constitutional violation during his discussion with Officer Davis.

There also is not sufficient evidence from which it can be inferred that Chief Wadsworth should have had knowledge of a violation. Mr. Harris's testimony reveals that the Chief was not present during the incidents leading to the arrest and did not witness the conduct made the basis of the arrest for disorderly conduct by Officer Davis. Mr. Harris was already under arrest, handcuffed in a patrol car when he first saw Chief Wadsworth at the scene. (Doc. # 23, Ex. 1 at 45.) Mr. Harris alleges that the Chief could have spoken with another officer on the scene, Chris Beste, who supposedly would have given information to establish that Mr. Harris was not guilty of disorderly conduct. Mr. Harris does not argue that Chief Wadsworth actually spoke with Officer Beste. Nor has Mr. Harris demonstrated that Chief Wadsworth had a duty or obligation to speak with Officer Beste or any other officer that night. Furthermore, Mr. Harris bases his argument on Officer Beste's deposition testimony, taken years after the incident, which offered facts from his recollection of what occurred inside the hospital, and did not support Officer Davis's version of events. However, even if Chief Wadsworth discussed the incident with Officer Beste the night

of Mr. Harris's arrest, there is nothing in the record that shows what Officer Beste said, or that he presented information to Chief Wadsworth that revealed a constitutional violation.

There is no evidence that Chief Wadsworth personally participated in the alleged constitutional violation or that there are "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keating*, 598 F.3d at 762 (citation and internal quotation marks omitted). There is no evidence of any other involvement or participation by Chief Wadsworth in Plaintiff's arrest or prosecution. In *Keating*, the supervisors were held to have "unlawfully caused the violation" because they personally directed the subordinate officers to act. *Id.* at 765. There is no such evidence in this case. There is nothing to demonstrate that Chief Wadsworth directed any action by Officer Davis on June 8, 2006. Nor did Mr. Harris demonstrate that Chief Wadsworth had personal or firsthand knowledge of the facts of the incident.

Absent personal participation, there must be a "causal connection between the actions of the supervising official and the alleged constitutional violation." *Id.* at 762. Mr. Harris also has not demonstrated a causal connection between Chief Wadsworth and the arrest and prosecution, or that Chief Wadsworth had knowledge of a

constitutional violation. Defendants' motion for summary judgment is due to be granted.

## V.  CONCLUSION

For the reasons stated, the City of Prattville and Chief Wadsworth are entitled to summary judgment on all of Mr. Harris's § 1983 claims.

Accordingly, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 18) is GRANTED.  A separate final judgment will be issued.

DONE this 27th day of June, 2012.

        /s/ W. Keith Watkins  
CHIEF UNITED STATES DISTRICT JUDGE